GENE A. MURRAY *v.* FREDERICK STEINMANN

[No. 333, September Term, 1975.]

*Decided December 31, 1975.*

The cause was argued before ORTH, C. J., and GILBERT and LOWE, JJ.

*Stanley R. Jacobs* for appellant.

*James W. Himes*, with whom were *Edward H. Hammond, Jr., Joseph G. Harrison, Jr.*, and *Williams, Hammond, Moore & Shockley* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

By agreement signed the 14th day of May, 1973 Frederick Steinmann agreed to convey unto Gene A. Murray, "all his right, title, interest and estate in and to the Motel known as Seascape Motel, located on Baltimore Street, in Ocean City, Worcester County, Maryland, and a Five Percent (5%) Interest in Harbor Joint Venture, be the same Stock, Partnership Interest or any other interest whatsoever, that the said FREDERICK STEINMANN might have at the time of signing this Agreement." Payment of the $100,000 purchase price by Murray was to be $20,000 cash at execution of the agreement and the balance by three notes totaling $80,000, which were subsequently (April 16, 1974) consolidated into a

single confessed judgment note for that sum. An additional $20,000 was paid on that note. Upon default on the balance, judgment by confession was entered pursuant to Md. Rule 645 a. Within the 30 days required by Md. Rule 645 c, Murray filed a motion to vacate confessed judgment pursuant to Rule 645 d, assigning as his reasons that he had entered the contract

> " . . . based on certain false and misleading statements and representations . . .",

made by Steinmann to Murray and that he had incurred substantial damages

> " . . . as a direct result of [Steinmann's] false, fraudulent and misleading statements. . . ."

Appellant Murray thus assumed the burden of supporting the facts alleged, *Cropper v. Graves*, 216 Md. 229, if, indeed, those allegations could be viewed as facts.[1] His burden of proof is not a heavy one:

> "In such cases, if the evidence adduced in support of the motion is sufficient to persuade the fair and reasoned judgment of an ordinary man that there are substantial and sufficient grounds for an actual controversy as to the merits of the case, the defendant should be deemed to have met the burden of showing that he has a meritorious defense. In other words, if the evidence is such that persons of ordinary judgment and prudence could honestly and fairly draw different inferences from it, one favoring the plaintiff and the other the defendant, the court should not itself decide that conflict, but should submit it to a jury." *Keiner v. Commerce Trust Co.*, 154 Md. 366, 371.

This liberal power to vacate judgments entered by

---

1. Md. Rule 645 c requires that the motion to vacate " . . . shall set forth fully the facts . . ." relied upon for the meritorious defense alleged. Murray's motion, which set forth no facts, was obviously deficient under the rule.

confession, permitting a trial upon the merits of a case after application of a defendant who prima facie shows such defense, has been sanctioned repeatedly by the Court of Appeals. *Williams v. Johnson*, 261 Md. 463, 467; *Stankovich v. Lehman*, 230 Md. 426, 432; *Cropper v. Graves*, 216 Md. 229, 234; *Keiner, supra,* 154 Md. at 371; *Remsburg v. Baker*, 212 Md. 465, 470; *Bolotin v. Selis*, 212 Md. 239, 242.

Having these principles in mind, we will now consider the evidence supporting the grounds upon which appellant bases his motion to strike out the judgment. Since the allegations are that appellant was induced to contract to his detriment because of certain false, fraudulent and misleading statements, we turn again to *Keiner, supra*, for guidance. Here, as in *Keiner*, the "case finally turns on whether the appellant showed, in accordance with the rule stated above," that his agreement to sign the note as consideration for the purchase "was procured by fraudulent misrepresentations of material facts" made to him by Steinmann, "which were false and known by [Steinmann] to be false, but which [appellant] believed to be true, and upon which [he] relied." *Id.* at 372.

### False Representations Known to be False

The false representations which appellant holds out are three in number. First, he says that Steinmann claimed that he had a $90,000 cumulative investment in the twenty percent share in the Seascape Motel he sold to Murray, when in fact he only had $89,000 invested, of which $18,000 had been supplied by Steinmann's law partner. Secondly, but coincident with the first, he complains that he did not know of Steinmann's law partner's participation and because of it may not have received all he bargained for because the partner did not join in the conveyance. He testified, however, that he had bargained for 20% of the motel and does not deny that he received 20% of the motel. Steinmann explained that he conveyed any and all interest which he had directly or through his partner's contribution. The agreement called for a quit claim of all interest by Steinmann and there is no evidence that anything was

withheld directly or indirectly. Appellant's complaint that the agreement was devoid of any suggestion that the partner's interest was being sold is without substance. The evidence shows only that Steinmann's law partner "agreed to put in $18,000 of the money." Although he was characterized as a "silent partner" of Steinmann's, the evidence of his involvement does not reach a point indicating corporate ownership of the motel — only an understanding with Steinmann who paid him interest from the motel income in return for use of the $18,000. Even if there had been some indicia of ownership by the law partner, appellant failed to show that he received less than that for which he bargained. In fact, Steinmann clearly stated that he was fully authorized to convey his interest and that of his partner — in whatever form the latter may have taken — and he did so.

Next appellant complains that he thought he was buying a partnership interest as opposed to corporate stock. Appellant's contention is that the corporate structure precluded him from procuring certain tax advantages which he expressly sought.

At the hearing on his motion to vacate in the Circuit Court for Worcester County, Murray's testimony as to his reliance on the existence of a partnership was contradictory. Twice he denied that Steinmann claimed his investment was in a partnership rather than in a corporation:

> "Q. At the time you bought it, did you understand that it was already a partnership?
>
> A. No, we didn't get into that. But that is why I was buying it, for a tax loss, so it would have had to have been a tax loss.
>
> . . .
>
> Q. And did Mr. Steinmann indicate that within a reasonable time that this would be converted to a partnership?
>
> A. No, we never got in it, that as far as I knew it was a partnership.";

however, he also said:

> "Q. Did Mr. Steinmann ever represent to you that it was a partnership at the time that you bought his interest?
>
> A. Yes, it was supposed to have been a partnership agreement, and I was taking over a partnership, and I was paying — I was paying him a profit on the $90,000.00 that he had invested." [2]

Steinmann stated that he explained to Murray that he was selling a stock interest but explained the reason for not transferring stock certificates — he had never received such certificates himself.

Had the testimony of Murray and Steinmann been completely contradictory, there may have been a sufficient question raised as to whether a false representation had been made. However, Murray himself twice denied that Steinmann and he had even "gotten into" the question of whether the corporation would be converted into a partnership. His subsequent contradictory answer on cross-examination to the effect that Steinmann had represented that he was investing in a partnership, does not satisfy even the minimal burden necessary to vacate a confessed judgment.

Of the three allegedly false representations, Murray's proof has failed by his own admissions as to the partnership structure. As to whether Steinmann misrepresented the amount he invested, there remains at best a naked possibility of misrepresentation although Murray again admitted the $90,000 figure given him was a cumulative one. The cumulative total fell short of the representation by approximately $1,000. That issue then becomes one of reliance and materiality.

The "question whether [Steinmann] could in fact sell the interest belonging to his law partner, Mr. Hall," raised by

---

2. If the latter is true, perhaps Steinmann was referring to the partnership interest jointly held by him and his law partner, the relationship of which he testified was conveyed to Murray by telephone.

Murray from facts first known to him as a result of the hearing, is not a justiciable issue. There was no evidence at the hearing that *any* interest of Hall or Steinmann was retained by either, or not lawfully conveyed by Steinmann to Murray. This possibility was raised only speculatively by Murray's brief.

### Materiality and Reliance

"In a business transaction, reliance upon a misrepresentation of fact, intentionally misrepresented or otherwise, is justifiable only if the fact misrepresented is material. A fact is material if its existence or nonexistence is a matter to which a reasonable man would attach importance in determining his choice of action in the transaction, or the maker of the misrepresentation knows that its recipient is likely to regard the fact as important although a reasonable man would not so regard it. *Brodsky v. Hull,* [196 Md. 509]." *Carozza v. Peacock Land Corp.,* 231 Md. 112, 121.

Even assuming proof of all three of appellant's asserted false representations, we find the last mentioned without materiality. If Murray received the interest in the motel for which he bargained, it is of no material consequence to him from whom it was derived. Likewise, appellant has not shown that, had he known that Steinmann's investment was $89,000 rather than $90,000, he would not have entered into the transaction. The discrepancy of $1,000 is clearly not material.

The representation of a partnership structure as opposed to the motel's corporate structure which failed for want of proof of the representation, would again fail for want of proof of appellant's reliance thereon. Appellant testified that although he and Steinmann didn't get into the question of whether the business structure was a partnership, his interest in the purchase centered around a tax loss.

"But that is why I was buying it, for a tax loss, so it would have had to have been a tax loss."

However, appellant produced no evidence that a partnership would have provided him a "tax loss" and that the corporate structure would not. Nor did he prove how a tax loss would benefit him. The purchase of a "tax loss" is so peculiar a business transaction that some evidence of its procedure and purpose should have been provided to the court in order for it to determine the procedural application to the facts here. Certainly it is not so common an event in the day to day business world that a court might take judicial notice of its pecuniary niceties.

## Burden of Proof

Appellant's primary legal (as opposed to factual) contention is that the trial judge erroneously required him to prove fraudulent misrepresentations in order to prevail in vacating the confessed judgment. He argues that his burden was merely to show that he had a meritorious defense. Md. Rule 645 c; *Williams v. Johnson,* 261 Md. 463. However, appellant overlooks the fact that the meritorious defense he must show is required to accord with the allegations of his motion to vacate. Indeed the rule he cites to support his meritorious defense argument, Md. Rule 645 c, states that the motion

" . . . shall set forth fully *the facts* relied on for such defense." (Emphasis added).

Appellant's bald allegations of fraud and false representation clearly failed to comply as a matter of pleading. However, assuming that the trial judge could overlook the dearth of facts set forth by appellant's pleadings, clearly appellant's evidence should have been limited to the subject matter alleged as his defense.[3]

---

**3.** Appellant also complains that the judge relied on testimony

" . . . that a letter was sent to the Appellee . . . by Appellant which the Court concluded was an admission by Appellant that he owed [the balance of] $60,000.00, albeit that Appellant is deprived of a full hearing to present all the facts."

Unless appellant is arguing implicitly that the judge should not consider any evidence adverse to appellant, this contention is lost upon us. Appellant had every right to again take the stand to explain his letter.

The burden of proof to vacate a confessed judgment is not fulfilled by the mere assertion of a defense. There must be sufficient evidence to persuade the fair and reasoned judgment of an ordinary man

> " . . . that there are *substantial* and sufficient grounds for actual controversy as to the merits of the case. . . ." Md. Rule 645 d; *Williams v. Johnson,* 261 Md. at 466. (Emphasis added).

We agree with the trial judge that there was no "substantial and sufficient grounds for actual controversy as to the merits of the case. . . ." Md. Rule 645 d.

*Judgment affirmed.*
*Costs to be paid by appellant.*